REALTY IMPROVEMENT COMPANY OF NEW JERSEY,
complainant,

*v.*

H. II. MONTGOMERY, superintendent of banks of the State
of Alabama, defendant.

[Decided December 20th, 1923.]

1. Where a contract provided that upon executing a conveyance of
land. the superintendent of banks will file a petition in court asking
for the approval and confirmation of a contract of sale, and that in
event of such approval the terms of the contract shall become binding
and obligatory upon each of the parties thereto, and that in event of
the non-approval by the court (and other contingencies), the contract
shall cease to be binding on each of the parties thereto, and each
party will be absolved from any liability to the other, and the con-
summation of the contract failed, no application having been made
to the court for its approval, and the defendant notified the com-
plainant that all the rights and privileges as provided by said con-
tract were terminated, the defendant has no right to retain the land
conveyed to him in pursuance of the terms of the contract.

2. Equity does not favor a forfeiture, except where there is no
alternative.

On pleadings and proofs.

*Mr. Michael Dunn,* for the complainant.

*Messrs. Lindabury. Depue & Faulks,* for the defendant.

LEWIS, V. C.

This is a bill to set aside a conveyance of land in Bergen
county, New Jersey, made by the Realty Improvement Com-
pany of New Jersey, the complainant, to D. F. Green. as
superintendent of banks for the State of Alabama, pursuant
to a contract entered into between those parties on June 28th,
1920, whereby the complainant was to purchase from Green.
as superintendent of banks. the property in Birmingham.

Alabama, which had been used as the bank building of the Jefferson County Bank, which was in process of liquidation by the superintendent of banks at the time the contract was made. This land represented an agreed valuation of sixty-three thousand dollars ($63,000), which covered the fifty thousand dollars ($50,000) mentioned "as the consideration for entering into this contract, and is to be considered as earnest money, and that in the event the realty company fails to consummate the purchase from the superintendent of banks of the property herein specifically described, on or before January 1st, 1921, by the payment to the said superintendent of banks in cash, of the difference between the aggregate of the indebtedness secured by the first and second mortgages on said property, and one million two hundred and fifty thousand dollars ($1,250,000) which is herein fixed as the purchase price of the property hereinabove described and designated as the Jefferson County Bank Building," that thereupon the superintendent of banks should become the absolute owner of the land.

The mortgage indebtedness on the bank property amounted to four hundred and eighty thousand dollars ($480,000).

The contract further provided that

"upon the execution of said deed by the realty company so conveying said lots to the superintendent of banks. the superintendent of banks will file a petition in the circuit court of the tenth judicial circuit of Alabama in equity, asking for the approval and confirmation of this contract of sale. In the event this contract and the sale as herein provided for is ratified and approved by the court, then the terms of this contract shall become binding and obligatory upon each of the parties hereto, and the superintendent of banks will furnish unto the realty company an abstract of title to the property herein-above specifically described; but. in the event the said court fails to confirm this contract and to authorize the sale of the property as herein provided for, or if the title to the property hereinabove specifically described, known and designated as the Jefferson County Bank Building, should not be good, with the exception of the mortgages now existing thereon; or in the event the representatives of the superintendent of banks should conclude that the lots herein provided to be conveyed to the superintendent of banks were not of the value of $63,500, then. in either of said events, this contract shall cease to be binding upon either of the parties hereto, and the superintendent of banks will reconvey unto the realty company the property theretofore

conveyed to it, and each of the parties hereto will be absolved from any and all liability of every nature whatsoever to the other created or sought to be created by the terms of this contract."

D. F. Green subsequently was succeeded by H. H. Montgomery, as superintendent of banks, who is the present defendant in this suit.

The time of performance of the contract of June 28th, 1920, was specifically extended from January 1st, 1921, to April 1st, 1921, and later to August 1st, 1921, and negotiations were in progress to extend the time still further to September 1st, 1921. These extensions were evidenced by written agreements personally executed between the parties, and they provided that "all of the terms, conditions and covenants contained in said contract hereinabove referred to, dated June 28th, 1920, shall continue in force and effect."

The consummation of the contract, however, failed, and on September 2d, 1921, the superintendent of banks notified the realty company that "all rights and privileges as provided for by said contract, and the extensions thereof, are terminated and no longer in force and operation."

Later, representatives of the superintendent of banks demanded of the realty company the possession of the Bergen county land, and attempted to put an agent in charge thereof for the purpose of selling it. Thereupon the present bill was filed to set aside the contract referred to, and for a reconveyance of the land conveyed under it, and for *ad interim* restraint. A preliminary injunction was issued in accordance with the prayer of the bill, and the case came on for final hearing upon the pleadings and proofs.

The evidence disclosed that shortly after the making of the contract a portion of the bank building was leased for a long term of years to the Federal Reserve Bank of Atlanta, without the knowledge or consent of the realty company. This not only took an important part of the building out of the control of the realty company, but seriously embarrassed it in its efforts to finance the transaction in accordance with the contract; so much so, in fact, that it was this phase of the

24

situation which made it necessary for the realty company to apply for an extension of the time within which to complete the operation, and when that first extension was granted, the Alabama people were evidently so much concerned about their action in thus leasing that portion of the bank building that they insisted upon the realty company expressly waiving "any objection to any and all leases now existing for any and all parts of said Jefferson County Bank Building."

Following the second extension carrying the date of performance down to August 1st, 1921, a further extension to September 1st, 1921, was agreed upon, provided the realty company would convey to the superintendent of banks additional land of the value of $3,000. A controversy arose, however, regarding the realty company's compliance with this condition, and the deed for the additional land was rejected by the superintendent of banks as not being in compliance with the arrangement.

It also developed that the bank building was not owned by the Jefferson County Bank at all, but by the Jefferson Realty and Building Company, a separate and distinct private corporation (although it did hold a large proportion of the stock of the latter company), and that, therefore, the superintendent of banks had never been in a position to specifically perform that part of the contract which provided that the "said D. F. Green, as superintendent of banks, in charge of the affairs and assets of the Jefferson County Bank for liquidation, agrees to sell to the party of the first part, upon the terms and conditions hereinafter stated," the property covered by the contract.

The contract to purchase the bank building was subject to a condition precedent, i. e., "subject to the approval and confirmation by the circuit court of the tenth judicial circuit of Alabama in equity, wherein there is now pending, under the statutes of Alabama, the liquidation of the Jefferson County Bank."

In addition to the provisions previously quoted the contract also contained the following condition:

"On condition that the court now having jurisdiction under the statutes of this state of the liquidation of the Jefferson County Bank, approves and confirms the sale as herein provided for, the superintendent of banks will, upon the payment to him in cash by the realty company, on or before January 1st, 1921, of the difference between the then aggregate indebtedness secured by the first and second mortgages on the above described property and one million two hundred and fifty thousand dollars ($2,250,000), have executed a deed conveying to the realty company or its assigns the property hereinabove described, subject to the then outstanding first and second mortgages, and freed from all other liens and encumbrances, and the superintendent of banks will also convey unto the realty company or its assigns, or such person, firm or corporation as it may designate, the lots theretofore conveyed by the realty company to the superintendent of banks, in payment of the fifty thousand dollars ($50,000), as the recited consideration for the execution of this contract."

It is conceded that no application was ever made to the circuit court of Alabama for the approval stipulated in the contract, and that the court mentioned never did, in fact, grant the approval specified. The realty company contends that, therefore, the superintendent of banks failed to perform the covenants and conditions of the contract which it was incumbent upon him to perform, and that because of this the realty company was unable to secure the necessary financial co-operation to carry through the transaction, and is absolved from performing its part of the contract. The superintendent of banks, however, through his counsel and representatives, took the position that inasmuch as the title to the bank property was not in the banking corporation, but was held by the private corporation referred to, it became unnecessary to obtain the approval of the contract and the sale, by the circuit court, and that the subsequent action on the part of the corporation, holding title to the bank property in executing a deed for the premises to the realty company, and tendering it or placing it in escrow was a substantial compliance with the covenants of the contract. He further contends that Seaman, the secretary of the realty company, who had been active in conducting the negotiations for the purchase, had assented to this changed procedure, and that there had been an acquiescence in it by the realty company.

Even assuming that there had been an acceptance of the rights and privileges granted to the Realty Improvement Company of New Jersey by the Jefferson Realty and Building Company, as set forth in the resolutions of the stockholders of the latter company, still I am unable to accord to that the force and effect of a waiver by the Realty Company of New Jersey of the covenants and conditions of the original contract. At the most, it was but the expression of a willingness on the part of the Realty Improvement Company of New Jersey to accept a deed from the Jefferson Realty and Building Company, especially in view of the express provisions of the formally executed extensions heretofore referred to and made contemporaneously therewith, that "all of the terms, conditions and covenants contained in said contract" should continue in force and effect. And I am unable, after a careful examination of the proofs, to find any formal corporate action by the Realty Improvement Company of New Jersey, whereby it can be said that it either waived the terms and conditions of the original contract of June 28th, 1920, or acquiesced in any substituted procedure in lieu thereof. Nor do I find any memorandum in writing agreeing to a substituted contract which would satisfy the requirements of the statute of frauds.

Seaman, indeed, was extremely desirous of bringing about a consummation of the transaction, and expressed willingness from time to time to yield to the line of least resistance, in an effort to accomplish this, but the proofs are replete with evidence showing the opposition of Jennings, the president of the Realty Improvement Company of New Jersey, to Seaman's wishes, even to the extent of his retaining individual counsel to represent his interests and views.

The situation reached its climax by the sale or offer or contract to sell the bank property to other parties, at a distinct advantage over the terms of the contemplated sale to the complainant; so that, in its present aspect, it shows the final disposition, or opportunity of disposition of the bank property by its owners to a better advantage than that contemplated by the contract involved in this suit, and the land

the complainant vested in the superintendent of banks of Alabama, who seeks to assert his prerogatives of ownership in it, notwithstanding his failure to perform the important covenant stipulated as a condition precedent in the contract..

When the corporation in Alabama that held title to the bank building tendered their deed in escrow, they slipped in a condition different from that which appeared in the original contract, for, in the original contract the Realty Improvement Company of New Jersey was to purchase from the superintendent of banks, subject to two mortgages, aggregating four hundred and eighty thousand dollars ($480,000), but in the resolutions and deed of the private corporation holding title, it was provided that the Realty Improvement Company of New Jersey should "assume and agree to pay" those mortgages, which is quite a different proposition, and which would have obligated the Realty Improvement Company of New Jersey to pay them in the place of the original makers of the bonds.

There is another significant fact, and that is this : In every sale made by the superintendent of banks, either of personalty or realty belonging to the bank, except this one, he did go to the Alabama court and get the approval of that court of the sale, which may indicate that that approval was necessary in this case, and that for some reason or other they were afraid to make the application, and hence sought to get the New Jersey corporation to take title without it.

To find in favor of the defendant would, it seems to me, under these circumstances, work a forfeiture of the Realty Improvement Company's property, which, in my opinion, would be most inequitable, and equity does not favor a forfeiture, except where there is no alternative.

I am, therefore, constrained to grant the prayer of the complainant's bill and will advise a decree accordingly.